IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Jeremy L. Rucker, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:10-cv-01533-JMC |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Greenville County Sheriff Department, ) | |
| Sheriff Steve Loftis, in their individual ) | |
| capacity, Brian Tollison, Steve Rhea, ) | |
| Brad Grice, Patrick Swift in their ) | |
| individual capacities and Greenville ) | |
| County, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

    This matter is before the court on Defendant Greenville County (the "County") and Defendant Steve Rhea's ("Rhea") Motion for Summary Judgment [Doc. 28] and Defendant Brian Tollison's ("Tollison") Motion for Summary Judgment [Doc. 29], pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff filed no response to Defendants' Motions for Summary Judgment. Plaintiff's Complaint [Doc. 1-1] sets forth two causes of action,[1] a state law claim for gross negligence and recklessness against all Defendants, and a claim for failure to train and supervise police officers brought under 42 U.S.C. § 1983 against Defendants Sheriff Loftis,

---

[1] In their memoranda in support of their Motions for summary judgment, Defendants address a possible claim against them for excessive force; however, Plaintiff's Complaint alleges only two causes of action—a state law claim for gross negligence and recklessness and a claim for failure to train and supervise police officers.

Greenville County Sheriff's Department, and Greenville County.[2] For the reasons set forth below, the court grants Defendants' Motions for Summary Judgment.

## FACTUAL AND PROCEDURAL HISTORY

On May 15, 2008, Tollison and three other deputies of the Greenville County Sheriff's Department were investigating prostitution in Greenville. Tollison observed two known female prostitutes enter a vehicle with an older male. Tollison followed the vehicle to a local business where the vehicle stopped for approximately twenty-five minutes. Tollison then followed the vehicle to a house. The females exited the vehicle and went into the house. The male driver then departed in the vehicle. Deputy Brad Grice stopped the vehicle, and the driver admitted that he had "turned a trick" with one of the females.

Based on past experiences, Tollison suspected that the prostitutes may have been seeking drugs at the house, so Tollison kept the house under surveillance. About twenty minutes later, a truck pulled into the driveway of the house, and the driver of the truck went into the house. A short time later, the driver of the truck came out of the house. Tollison exited the vehicle to talk to the driver of the truck. Upon seeing Tollison, the driver of the truck ran toward the back of the house. Tollison then realized that there was a passenger in the truck. The passenger was Plaintiff.

Pursuing the driver of the truck would have positioned Plaintiff behind Tollison, so instead of pursuing the driver, Tollison approached the truck to question Plaintiff about the driver. Plaintiff was speaking with someone on his cell phone. Plaintiff exited the truck and stated to the person with whom he was speaking on the telephone that he was "out with the police." Tollison showed Plaintiff

---

[2] Only Defendants the County, Rhea, and Tollison have filed motions for summary judgment. Therefore, Plaintiff's claims against the remaining Defendants will not be further addressed in this Order.

2

his badge and identified himself. Tollison smelled the odor of burnt marijuana coming from the truck. Tollison asked Plaintiff to sit back down.

Plaintiff appeared nervous and fidgety. Plaintiff kept standing up and put his hands in his pockets despite Tollison's instruction that he keep his hands in view. Tollison advised Plaintiff that he was going to arrest him. Plaintiff reached toward Tollison's gun, and Tollison extended his arm in contact with Plaintiff to keep Plaintiff at a distance from him. Plaintiff reached into his pants and removed an object and stuffed it into his mouth. Tollison believed that Plaintiff was attempting to swallow drugs.

Rhea then arrived at the scene. When Rhea arrived, Tollison was struggling with Plaintiff, and Plaintiff was chewing something. Rhea did not have a taser, but he was able to assist Tollison in trying to get Plaintiff under control. Tollison gave verbal commands for Plaintiff to spit the alleged drugs out of his mouth. Plaintiff continued to resist. At this time, Tollison was still unable to get Plaintiff's left hand under control. Tollison feared that Plaintiff would make another attempt to grab Tollison's gun. Tollison struck Plaintiff with a closed fist approximately twelve times on Plaintiff's right cheek area. Plaintiff continued to resist and chew the alleged drugs.

Next, Deputy Brad Grice arrived on the scene. Plaintiff continued to resist. Deputy Brad Grice administered a taser against Plaintiff three times and delivered a number of kicks to Plaintiff before Plaintiff complied with the officers and the officers were able to get him under control.

Deputy Grice transported Plaintiff to the hospital. Marijuana was recovered from Plaintiff at the hospital. Plaintiff refused medical treatment and was released to police custody. Crack cocaine or cocaine base was later recovered from the truck in which Plaintiff had been a passenger.

Although the facts as alleged in Plaintiff's Complaint contradict, in part, those alleged and

supported by Defendants in their Motions for Summary Judgment and accompanying documents, Plaintiff did not file a response in opposition to Defendants' Motions for Summary Judgment or provide the court with any evidentiary support of the allegations set forth in the Complaint. Accordingly, for the purposes of Defendants' Motions, the court views the facts, as provided in Defendants' Motions for Summary Judgment and supporting documents, in the light most favorable to Plaintiff, the nonmoving party. *See* Fed. R. Civ. P. 56(e); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or

denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Even where a motion for summary judgment is unopposed, the court must review the motion and determine from the facts before the court whether the moving party is entitled to summary judgment as a matter of law. *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

## DISCUSSION

Plaintiff brings a state law gross negligence and recklessness cause of action against all Defendants. Plaintiff brings a claim for failure to train or supervise police officers against the County.

**Gross Negligence and Recklessness**

The County argues that it cannot be held liable for the alleged torts of the officers involved in the incident in question because the officers were not employees of the County, but employees of the state. The South Carolina Tort Claims Act (the "Tort Claims Act"), S.C. Code Ann. § 15-78-10–220, is the exclusive civil remedy for tort claims against a governmental entity. *See Flateau v. Harrelson*, 355 S.C. 197, 584 S.E.2d 413 (Ct. App. 2003). The Tort Claims Act allows a county to be held liable for the torts of its employees acting within the scope of their employment. § 15-78-70. However, in South Carolina, the sheriff and the sheriff's deputies are state employees rather than employees of the counties. *See Cone v. Nettles* 308 S.C. 109, 112, 417 S.E.2d 523, 525 (1992). As

the South Carolina Supreme Court has stated,

> (1) the South Carolina constitution establishes the office of the sheriff and the term of office. S.C. Const. art. V, § 24; (2) the duties and compensation of sheriffs and deputies are set forth by the General Assembly; (3) their arrest powers are related to state offenses; and (4) the Governor of South Carolina has the authority to remove a sheriff for misconduct and fill the vacancy. Based upon these factors, . . . the State has the 'potential power of control' over the office of sheriff, qualifying the sheriff as a state official. Moreover, a deputy, as an agent of the sheriff, is also 'more closely connected to the state than to the county,' hence a state official.

*Id.* (*quoting Gulledge v. Smart*, 691 F. Supp. 947 (D.S.C. 1988)), *aff'd*, 878 F.2d 379 (4th Cir. 1989). Accordingly, the County is not liable under Plaintiff's claim of gross negligence and recklessness.

Defendants also argue that under the Tort Claims Act Rhea and Tollison are exempt from personal liability for Plaintiff's gross negligence and recklessness claim. The Tort Claims Act constitutes the exclusive civil remedy for any tort committed by a governmental employee while acting within the scope of the employee's official duties. *See* § 15-78-200. "An employee of a governmental entity who commits a tort while acting in his official duty" is not liable, unless the alleged act constituted "actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." § 15-78-70(a)–(b). It is undisputed that Rhea and Tollison were acting in the scope of their employment at the time of the alleged incident. Plaintiff's Complaint states that Rhea and Tollison were "at all relevant times . . . acting within the course and scope of their employment." [Doc. 1-1]. Furthermore, Plaintiff's Complaint does not allege that Defendants acts constituted "actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." *See* § 15-78-70(a)–(b). Accordingly, Rhea and Tollison are not personally liable under Plaintiff's claim of gross negligence and recklessness.

**Failure to Train and Supervise Police Officers**

Plaintiff appears to allege that the County is liable under 42 U.S.C. § 1983 for failure to train and supervise the officers involved in the alleged incident. The doctrine of respondeat superior generally does not apply to claims brought under section 1983. *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658 (1978). A municipality may be liable under section 1983 only if the alleged wrongful conduct causing the constitutional deprivation is undertaken to effectuate an official policy or custom of the municipality. *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). A municipality may be liable for the wrongful acts of its employees if the municipality knows of a pervasive, unreasonable risk of harm from a specific source and as the result of a deliberate indifference or tacit authorization, does not take corrective action. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984).

> Generally, a failure to supervise gives rise to a § 1983 liability, however, only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel. A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability.

*Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983). Once it is demonstrated that there is a policy established and maintained by the municipality, the municipality is liable for deprivations of constitutional rights caused by actions pursuant to that policy. *Id.* Further, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiff alleges that the County failed to adequately train and supervise the officers involved in the alleged incident. However, Plaintiff does not allege that the alleged acts of the officers were

7

done to effectuate a policy or custom of the County. Plaintiff does not allege that the County was aware of any unreasonable risk of harm in employing the officers or that the County authorized or was deliberately indifferent to the actions of the officers. Plaintiff does not allege that any other incidents have occurred in which officers exhibited behavior similar to that alleged by Plaintiff in this case. Plaintiff has not alleged that the County's alleged failure to adequately train the officers amounted to a deliberate indifference to Plaintiff's rights. Further, Plaintiff fails to support the allegations in his Complaint with any evidence that the County failed to adequately train or supervise the officers. Thus, the court finds that Plaintiff's conclusory allegations are insufficient to overcome summary judgment.

## CONCLUSION

Therefore, for the reasons stated above, it is hereby **ORDERED** that Defendant Greenville County and Defendant Steve Rhea's Motion for Summary Judgment [Doc. 28] is **GRANTED**, and Defendant Brian Tollison's ("Tollison") Motion for Summary Judgment [Doc. 29] is **GRANTED**.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 20, 2012
Greenville, South Carolina